## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRIAN SIEVERS AND CHAD BURNETT;    ) | Case No.: _____ |
| Plaintiffs,    ) | |
| ) | |
| vs.    ) | COMPLAINT AND JURY TRIAL DEMAND |
| ) | |
| RCI ENTERTAINMENT LOUISIANA,    ) | |
| INC.;    ) | |
| ) | |
| Defendant.    ) | |

Plaintiffs Brian Sievers and Chad Burnett bring this action for stolen tips and other violations of the Fair Labor Standards Act ("FLSA") and Louisiana law, and allege as follows:

### PARTIES

1.      Plaintiff Brian Sievers is an individual of the full age of majority and a resident of St. Tammany Parish, Louisiana.

2.      Plaintiff Chad Burnett is an individual of the full age of majority and a resident of Orleans Parish, Louisiana.

3.      Named a defendant herein is RCI Entertainment Louisiana, Inc., a Louisiana corporation headquartered at 1428 Terpsichore St., New Orleans, Louisiana.

4.      RCI Entertainment Louisiana, Inc., operates a club on Bourbon Street known as Rick's Cabaret ("Rick's.")

### JURISDICTION AND VENUE

5.      The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

**6.** Venue is proper in this Court because Defendant is headquartered within this District, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. *See* 28 U.S.C. § 1391(b).

**7.** Plaintiffs demand trial by jury.

**8.** At all material times, Plaintiffs were employed by Defendant within the meaning of the FLSA.

**9.** Defendant's annual sales made or business done exceeded $500,000 during all years relevant to this action.

**10.** Defendant is engaged in interstate commerce under 29 U.S.C. § 203(s).

**FACTUAL ALLEGATIONS**

**11.** Rick's is a three-story "gentleman's club" on Bourbon Street. The second story is known as the VIP area.

**12.** When Sievers first began working at Rick's in August 2021, he was the outside doorman. He was promoted to the VIP 2 Host position in or around April 2022, and worked in that position until his resignation in September 2025.

**13.** Burnett worked as a VIP 2 Host for the entirety of his employment with Rick's, from October 2024 until September 2025.

**14.** To enter the VIP area, patrons must rent one of the VIP rooms, either for one-half hour or for a full hour. There are several VIP rooms, of different sizes and at different prices.

**15.** The VIP 2 Host was responsible for presenting the VIP room options to each patron, running the patron's credit card, and checking IDs before allowing patrons to enter the VIP room.

**16.** The patron's credit card receipt included a line for "gratuity." Most patrons

left a gratuity in addition to the VIP room charge.

17.    Rick's implemented a mandatory tip split for this VIP gratuity money.  Sixty percent of the nightly total VIP tips were allocated to the managers on duty.  Thirty percent was allocated to the VIP 2 Host.  Ten percent was allocated to the bartender.[1]

18.    At the end of the night, the Plaintiffs were required to print out the nightly "tip sheet" and bring it to the bartender.  The bartender would "cash out" the tips and Plaintiffs were responsible for calculating the 60/30/10 tip split and distributing the money.

19.    On weeknights, there might be only one or two managers on duty.  On weekends, there would be three or four.  No matter how many managers were working, they would receive 60% of the VIP tips.

20.    Managers were paid on a salary exempt basis.  Prior to this mandatory tip split policy, managers also received periodic bonuses from Rick's.

21.    On information and belief, the mandatory VIP tip split was put into place to replace the periodic manager bonuses, because paying manager bonuses reduces Rick's bottom line.

22.    Plaintiffs complained about the VIP tip allocation to managers, but to no avail.

23.    In early 2025, the VIP tip split was modified and five percent was allocated to the outside doorman.  From that point on, 60% of the tips went to managers, 27.5% went to the VIP 2 Host, 7.5% went to the bartender, and 5% went to the outside doorman.

24.    Plaintiffs were also required to pay a 5% fee to Rick's on their tips. The purpose of this deduction was never explained clearly to Plaintiffs, but in any event 5% exceeds the credit card company charge.  (Notably, this 5% deduction was not reflected on

---

1    On information and belief, the bartenders also received tip money directly from customers.  This bartender tip money was kept separate and not included in the mandatory tip split alleged here.

the tip sheet or any other written report that Plaintiffs ever saw). Patrons were also separately charged a 5% credit card fee on credit card payments.

25. The VIP 2 Host position was phased out in September 2025, and both Plaintiffs left Rick's to find different employment.

## COUNT ONE
## FAIR LABOR STANDARDS ACT
### 29 U.S.C. §§ 201 ET SEQ.

26. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

27. Section 3(m)(2)(B) of the Fair Labor Standards Act states: "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

28. Section 16(b) of the FLSA states: "Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages."

29. Defendant violated the FLSA by diverting 60% of the VIP tips to managers or supervisors.

30. Defendant further violated the FLSA by imposing a 5% credit card charge on Plaintiffs' tips, which constitutes an employer "keep[ing] tips received by its employees."

31. Defendant's actions were willful and/or showed reckless disregard for the provisions of the FLSA as Defendant knew, or should have known, such tip theft was illegal, and Defendant ignored Plaintiffs' repeated complaints.

32. Defendant failed to properly disclose or apprise Plaintiffs of their rights under

the FLSA.  This constituted a willful effort to hide the statutory violations set forth herein.

33.    Due to the intentional, willful, and unlawful acts of Defendant, Plaintiffs further seek recovery of liquidated damages.

34.    Plaintiffs are further entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT TWO
## LOUISIANA UNFAIR TRADE PRACTICES ACT
### LA. REV. STAT. §§ 51:1401 ET SEQ.

35.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

36.    Defendant's actions in unlawfully distributing tip money to managers, and charging a 5% credit card fee on tips, constitute unfair trade practices in violation of Louisiana law.

37.    Plaintiffs are entitled to disgorgement or other appropriate remedy, treble damages, and an award of reasonable attorney's fees and costs.


WHEREFORE, Plaintiffs Brian Sievers and Chad Burnett respectfully pray for judgment against Defendant as follows:

    a.    Payment of all monies owed;

    b.    Liquidated damages and/or treble damages to the fullest extent permitted under the law;

    c.    Litigation costs, expenses, and attorney's fees to the fullest extent permitted under the law;

    d.    Prejudgment interest; and

    e.    Such other and further legal or equitable relief as may be proper under the record established at trial.

DATED: October 15, 2025

*/s Charles J. Stiegler*

Charles J. Stiegler,  #33456
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite 104
New Orleans, La. 70124
Telephone: (504) 267-0777
Facsimile:  (504) 513-3084
Charles@StieglerLawFirm.com